This is an appeal by the City of Mobile and the Mobile City Planning Commission from summary judgment dismissing an alternative writ of mandamus in their favor and issuance of a peremptory writ of mandamus ordering the Mobile City Planning Commission and City of Mobile to issue a certificate of approval of a subdivision located within such planning commission's jurisdiction. We reverse and remand.
This case involves a proposed subdivision of property located in Mobile County known as Banbury Woods. The property is owned by the plaintiff Allen P. Waldon, who proposes to divide the property into eighteen separate lots. The proposed subdivision is L-shaped with twelve lots fronting Snow Road and the remaining six lots fronting Wulff Road. The property is located approximately 3.2 miles beyond the corporate limits of the defendant City of Mobile but is within the subdivision jurisdiction of the defendant Mobile City Planning Commission granted it by § 11-52-30, Code 1975. The Planning Commission receives its power to regulate the development of subdivisions from § 11-52-31, Code 1975. It provides:
 "The planning commission shall adopt regulations governing the subdivision of land within its jurisdiction. Such regulations may provide for the proper arrangement of streets in relation to other existing or planned streets and to the master plan. . . . Such regulations may include provisions as to the extent to which streets and other ways shall be graded and improved . . . as a condition precedent to the approval of the plat. . . ."
Pursuant to the authority contained in § 11-52-31, the Planning Commission adopted subdivision regulations.
Under Section II — Definitions, a major street is defined as:
 "MAJOR STREET. A street, existing or planned, which serves or is intended to serve as a principal trafficway and which is designated on the Major Street Plan as a limited access highway, major street, parkway or other term to identify those streets comprising the basic structure of the street system."
Both Snow Road and Wulff Road have been designated as major streets by the Planning Commission.
The subdivision regulations under Section II — Definitions, also define a marginal access street as:
 "MARGINAL ACCESS STREET. A street running parallel to and adjacent to or in the immediate vicinity of another street and which has as its principal purpose the relief of such other street from the local service of abutting properties."
We note that a marginal access street is synonymous with a service road. The subdivision regulations also provide that where *Page 947 
the subdivision has frontage on a major street the subdivider shall dedicate a right-of-way forty feet wide adjacent to such major street for a service road.
Before Waldon submitted his last application for approval of the final plat of Banbury Woods, he had submitted two previous applications for approval of the same subdivision. The two previous applications, dated 6 April 1979 and 4 January 1980 respectively, had been given final approval by the Planning Commission conditioned upon Waldon dedicating a service road with a forty-foot wide right-of-way parallel to Snow and Wulff Roads.
On 1 May 1980 Waldon submitted another application for final approval and requested the Planning Commission to reconsider the service road dedication requirement. Such application was discussed at a public hearing. Minutes of that hearing show:
 "Regarding the service road requirement, Mr. Looney [of the Planning staff] pointed out that Snow and Wulff Roads are both major thoroughfares. Service roads are needed to control ingress and egress of lots along the major thoroughfare. The proposed plan indicates there would be some 18 individual curb cuts for driveways into the major thoroughfare. Mr. Looney said the staff has agreed to work with the owner and his engineer in an effort to remove the service road requirements through design revisions. . . . If the owner agreed to dedicate the service road, however, the staff feels they could improve his plan so that he would not lose any lots.
 "It was noted that the county engineer's office does not recommend waiving the service road requirement. . . ."
Waldon requested that a forty-foot right-of-way for a service road be "reserved," but not dedicated. Such would not comply with the subdivision regulations. Under that circumstance, the Planning Commission unanimously denied the last application for Banbury Woods because there was no provision for dedication of a service road right-of-way paralleling Snow and Wulff Roads.
By letter of 7 May 1980, the Planning Commission notified Waldon of the denial and gave its reasons for that action. Waldon then filed a petition for the writ of mandamus to compel the Planning Commission and the City of Mobile to issue a certificate of approval for Banbury Woods without providing for a service road. The trial court entered summary judgment in behalf of Waldon as well as issuing the peremptory writ ordering the Planning Commission and City of Mobile to issue a certificate of approval for Banbury Woods without any provision for a service road. This appeal ensued.
Although Alabama's subdivision control statute, § 11-52-30, et seq., Code 1975, has but infrequently been the subject of litigation, this court has held that "[t]he authority of the Planning Commission to exercise control over subdivision of lands within the municipality is derived from the legislature. [Citation omitted.] It is authorized to adopt regulations not inconsistent with the statutes." Boulder Corp. v. Vann,345 So.2d 272, 275 (Ala. 1977).
Section 11-52-31 specifically authorizes a planning commission to adopt regulations providing "for the proper arrangement of streets in relation to other existing or planned streets and to the master plan." This court has previously held that the Planning Commission's bylaws, which were specifically authorized by Code, have the same force and effect as properly enacted statutes. Lynnwood Property Owners Ass'n v. LandDescribed in Complaint, 359 So.2d 357 (Ala. 1978).
Subdivision legislation is part of planning legislation, as is zoning; they are all predicated on the police power of the state. Consequently, questions concerning the requirements for public improvements depend on the same criteria as are found in cases involving the exercise of the police power through zoning restrictions. A particular requirement or application of the general rules and regulations in a particular manner to a specific application for approval will not be invalidated unless, like a *Page 948 
particular zoning restriction, it is clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals or general welfare.
 ". . . Some of the rights, title, and interests of abutting lot owners in, and to, streets dedicated to public use; and some of the rights, title, powers and obligations of municipalities as to their streets are discussed and defined in: McCraney v. City of Leeds, 239 Ala. 143, 194 So. 151 (1940); Thetford v. Town of Cloverdale, 217 Ala. 241, 115 So. 165 (1927); City of Montgomery v. Orpheum Taxi Co., 203 Ala. 103, 82 So. 117 (1919). A city has extensive power to control and regulate the use of its streets as the above authorities show. . . ."
Johnston v. White-Spunner, 342 So.2d 754, 760 (Ala. 1977).
We opine that regulations requiring the dedication of property for service roads or marginal access roads in subdivisions where such subdivision abuts a major street are well within the powers granted to municipalities under §11-52-31. A municipality, among its many duties, is responsible for formulating a safer flow of traffic within its jurisdiction; included in this responsibility is control of ingress and egress to its streets and highways.
By the foregoing, we are not to be understood as allowing a planning commission to require dedication of property anytime it is of the opinion that such dedication is needed; there are limitations on the powers of such commissions. It has those powers alluded to, provided however, that the exercise of same does not run afoul of the enabling act and the constitutional requirements of due process. Lynnwood Property Owners Ass'n v.Lands Described in Complaint, supra.
The judgment of the trial court is reversed and the cause is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED WITH DIRECTIONS.
TORBERT, C.J., and MADDOX, FAULKNER and JONES, JJ., concur.
ALMON, SHORES, BEATTY and ADAMS, JJ., dissent.