This is a land use case. The appeal is from a final judgment of the circuit court in which Plaintiffs/Appellants Jess W. Hall, S L Beverages Blends, Inc., and Lucian Simonetti sought, and were denied, rezoning of their real property from classification C-1 to C-3. We reverse and remand.
Under a C-1 classification, the subject property could be used for, inter alia, service stations, bakeries, banks, barber and beauty shops, bowling alleys, bus stations, cafes and restaurants, dog kennels, drug stores, fortune telling and palmistry, hotels, ice cream, soda and soft drink dispensing establishments, indoor recreation, laundry and dry cleaning stations and plants, lodge halls, mini-warehouses, motels, private clubs, private schools, post offices and other public buildings, professional and office buildings, radio stations, retail stores and service establishments, shopping centers, theaters, veterinarian establishments, and the sale of packaged beer and wine for off- and/or on-premises consumption. Classification C-3 would permit the additional sale of liquor for off-premises consumption.
The Jefferson County Planning and Zoning Commission, after a public hearing on October 14, 1982, recommended to the Jefferson County Commission that Plaintiffs' rezoning application be approved. The Jefferson County Commission, after a second public hearing, denied Plaintiffs' application for rezoning of their property.
Plaintiffs initiated this cause on December 20, 1982, naming Jefferson County and its individual Commissioners, and their respective successors in office, as Defendants.
Trial commenced ore tenus on July 18, 1983. On July 26, 1983, the trial court entered a final judgment upholding the decision of the Jefferson County Commission and denying Plaintiffs' request to rezone their property. This appeal followed. We reverse.
 FACTS
Plaintiffs are the owner and lessees of a parcel of realty, improved by a small building, situated on the southwest side of U.S. Highway 78 in the Forestdale area of Jefferson County, Alabama. The land fronts onto Highway 78 and is within the Jefferson County zoning jurisdiction. The building is vacant, and contains approximately 1,200 square feet of floor space. The subject property was formerly used as a small, fast-food restaurant, as well as a vacuum cleaner sales office.
Highway 78 is a four-lane thoroughfare running between Birmingham and Jasper and to points beyond. The predominant zoning classification of the properties along both sides of Highway 78 in the area in question is C-1. There are three parcels of realty within the area of the subject property which are zoned C-3.[1]
Under the C-1 classification, property may be used for the retail sale of packaged beer and wine for off- and/or on-premises consumption. The tract of land situated immediately to the east of Plaintiffs' property is zoned C-1, and is used for a convenience store for the sale of beer, wine, and gasoline. The property abutting the convenience store to the east, separated from the Plaintiffs' property only by the convenience store, is zoned C-3, and is used as a nightclub-lounge, where beer, wine, and liquor are sold for on-premises consumption. The other two C-3 zoned parcels in the area are family-style restaurants that specialize in the sale of pizza and beer for on-premises consumption. All C-3 parcels were changed from C-1 classifications pursuant to the same procedural and substantive rules, there being no "use variance" procedure available to the landowners.
In the immediate area of the subject property are supermarkets, drug stores, and a convenience store with C-1 zoning *Page 794 
classifications, wherein beer and wine are sold for off-premises consumption.
Plaintiffs' property is approximately 2,000 feet from the nearest school or church, and is further from the nearest church and school than the convenience store and nightclub-lounge properties located to the east of it.
The subject property complies with the off-street parking requirements of Jefferson County zoning ordinances and has adequate ingress to and egress from Highway 78. Such ingress and egress is similar to that of the adjacent convenience stores, the nightclub-lounge, and other properties located along Highway 78.
There is no drainage problem affecting Plaintiffs' property, and all utilities, including sanitary sewer, are adequate and available at the site.
The nearest establishment to Plaintiffs' property selling liquor for off-premises consumption is an ABC Store in the Westgate Shopping Center in Birmingham, approximately four and one-half miles to the southeast of the Plaintiffs' property. There is another ABC Store at Brookside, Alabama, approximately six and one-half miles to the northwest of the parcel in question.
Plaintiffs presented testimony from an urban planner and real estate appraiser to the effect that use of the property under a C-3 zoning classification would not adversely affect adjoining property values or the properties themselves.
 DECISION
Portions of the trial court's decree read as follows:
 "This is an action filed by the Plaintiff, Jess W. Hall, as owner, and S L Beverages Blends, Inc., and Lucian J. Simonetti as lessees of a parcel of land in the unincorporated area of Jefferson County seeking a declaratory judgment that the refusal of the County Commission of Jefferson County to rezone the property owned or leased by the Plaintiffs from C-1 (commercial) to C-3 (commercial, for off-premises sale of liquor) was arbitrary and capricious and violated the rights and privileges afforded the Plaintiffs under the constitution of the United States and the State of Alabama.
". . . .
 "The Plaintiff[s] sought a change of zoning before the Jefferson County Commission of the subject property from C-1 commercial district to C-3 commercial district to permit the use of the subject property for a package store selling at retail for off-premises consumption wine, beer, whiskey, ice, cigarettes, snack foods, soft drinks and other convenience store items but not a full grocery store inventory.
 "The present zoning (C-1) permits the subject property to be used for service stations, bakeries, banks, barber and beauty shops, bowling alleys, bus stations, cafes and restaurants not including the sale of on-premises alcoholic beverages, dog kennels, drugstores, fortune telling and palmistry, hotels, ice cream, soda and soft drink dispensing establishments, indoor recreation, laundry and dry cleaning stations and plants, lodge halls, mini warehouses, motels, private clubs, private schools, post offices and other public buildings, professional and office buildings, radio stations, retail stores and service establishments, shopping centers, theaters, veterinarian establishments, and the sale of package beer and wine for off-premises consumption. The C-3 zoning sought by the Plaintiffs would permit the subject property to be used for any establishments selling intoxicating beverages and liquors, dance halls and nightclubs and taverns.
 "The subject parcel is located in a corridor of land on each side of the highway, 80% of which is zoned C-1 and slightly less than 20% is zoned residential. Approximately 265 feet from the subject property is a parcel of land zoned C-3 and occupied by a restaurant and lounge selling beer, wine and liquor for on-premises consumption. A convenience store adjacent to the subject property sells *Page 795 
beer and wine (off-premises). The nearest establishment selling liquors for off-premises consumption is the State ABC store located in the Westgate Shopping Center approximately 4 1/2 miles to the southeast on Highway 78.
". . . .
 "The evidence shows that the subject property can be used for most of the uses permitted under the C-1 zoning classification and the evidence fails to show any material change in circumstances in the area that has affected or would affect the uses of the subject property.
". . . .
 "The issue is whether the County Commission arbitrarily and capriciously denied the Plaintiff's application to rezone. . . . If the question of zoning or rezoning is fairly debatable, a Court will not substitute its judgment for that of the governing body acting in a legislative capacity. . . .
 "It is clear beyond doubt that the subject property has a reasonable, practical and suitable use under its present zoning. The C-1 zoning classification appears to have the broadest possible commercial uses authorized by any of the county zoning classifications. Considering the primary zoning scheme of the area where the subject property is located, including the proximity of the residential uses of the lands immediately adjacent to and behind the C-1 zoning corridor on each side of the highway, the Court finds and concludes that the Plaintiffs have failed to sustain the burden of proof that the County Commission acted arbitrarily and capriciously when it denied the Plaintiffs' application. . . . The Court further finds and concludes that the Plaintiffs have failed to show that they were treated differently in any manner than others similarly situated. The `equal protection' contention is denied."
We note that the aforementioned decree, if supported by evidence, is favored with a presumption of correctness and is not to be disturbed unless it is plainly or palpably wrong or manifestly unjust. Woodard v. City of Decatur, 431 So.2d 1173
(Ala. 1983). Our standard of review, as well as the standard applicable in the trial below, is whether the County Commission's denial of the zoning application is founded upon "fairly debatable" factual and policy issues. Jefferson Countyv. O'Rorke, 394 So.2d 937 (Ala. 1981); City of Gadsden v.Downs, 412 So.2d 267 (Ala. 1982).
Both the trial court and Appellees emphasize the fact that because "[it] is clear beyond a doubt that the subject property has a reasonable, practical and suitable use under its present zoning," Plaintiffs' sole motivation in seeking to have their property rezoned is financial. To be sure, under certain circumstances, the profit motive is an inappropriate test for determining the propriety of zoning restrictions. In Woodard v.City of Decatur, supra, this Court said:
 "We think it appropriate to point out here that financial loss is not the test to determine if the zoning ordinance is arbitrary and capricious. COME, an Unincorporated Association of Citizens v. Chancy, 289 Ala. 555, 269 So.2d 88 (1972). This Court in Episcopal Foundation of Jefferson County v. Williams, 281 Ala. 363, 367, 202 So.2d 726, 730 (1967), stated:
 "`The fact that the complainants . . . may suffer some financial loss and depreciation in the value of their property is not a test of the constitutionality of the zoning ordinance; nor is it a test to determine if the zoning ordinance is arbitrary, capricious, inequitable and discriminatory.'"
While reaffirming our adherence to these axioms regarding financial gain and/or loss in the context of zoning, we find them inapposite to the facts now before us. By way of speculation, had Plaintiffs sought a change from "residential" to "commercial" zoning under the current facts, Appellees' "financial impact" argument would merit consideration. See Calev. City of Bessemer, 393 So.2d 959 (Ala. *Page 796 
1980). In other words, where one seeks to change the "basic use" of his property from one zoning classification to another(e.g., residential to commercial), the mere projection of financial loss under the less advantageous classification, without more, will not justify the change. Woodard, supra.
Here, however, the "basic use" of the subject property would remain, for all practical purposes, the same under C-3 as under C-1, the exception being that under C-3 zoning Plaintiffs would be permitted the fullest and most beneficial use of their land.
Assuming that Plaintiffs sought to reclassify their realty from C-1 to C-3 in order to utilize it more profitably (i.e., to make more money), it is difficult, if not impossible under these circumstances, to envision a more logical reason. The legal justification for such reasoning is summarized in 63 Am.Jur.2d Property § 3 (1972):
 "Property . . . is composed of certain constituent elements, namely, the unrestricted right of use, enjoyment, and disposal of the particular subject of property. Of these elements the right of user is the most essential and beneficial. Without it all other elements would be of little effect, since if one is deprived of the use of his property, little but a barren title is left in his hands. This right of free and untrammeled user for legitimate purposes is fundamental and within the protection of the United States Constitution."
Stated another way, property ownership should, and does, bring with it freedom to use one's possession as the owner deems appropriate, subject, of course, to reasonable restraints for the general health, safety, or public welfare. Absent the need for such reasonable impediments, the landowner's "bundle of rights" should remain inviolate. Indeed, the "fairly debatable" standard is not invoked unless and until the zoning authority has met the threshold test of showing that the challenged zoning restriction comports with a legitimate governmental interest, or has a substantial relation to a legitimate public purpose.
The "fairly debatable" standard is a rule of procedure or application and does not subsume or modify the fundamental requisite that the ordinance itself and its application must have a reasonable and substantial relationship to the promotion of public health, safety, morals, or general welfare. City ofBoca Raton v. Boca Villas Corp., 371 So.2d 154 (Fla. 1979). As this Court observed in Jefferson County v. O'Rorke,394 So.2d 937 (Ala. 1981):
 "When a zoning restriction exceeds bounds necessary for the welfare of the public, it must be stricken as an unconstitutional invasion of property rights."
The trial court's rationalization — "It is clear that the subject property has a reasonable, practical and suitable use under its present zoning" — approaches the problem inversely. The zoning ordinance is not in itself a grant of powers, rights, and privileges to the landowner from which the trial judge was free to add or detract. Such plenary powers, rights, and privileges originated with Plaintiffs' ownership of the subject property.
As Plaintiffs' counsel aptly states, a logical extension of the reasoning adopted by the trial court in rejecting the rezoning, in these circumstances, would obviate any past, present, or future need for a C-3 zoning classification. Moreover, assuming such classification, no request for reclassification from C-1 to C-3 could ever be justified. Thus, the rhetorical question is: "Because you can use your land formost purposes, why do you need more?" Whatever the underlying motives behind that query, they cannot be justified, in this land use context, under the guise of enlightened social policy.
In requesting a reclassification of their property from C-1 to C-3 zoning, Plaintiffs were not seeking to modify the basic character of their area. What was at the time commercial under C-1 would thereafter remain commercial under C-3, the basic difference, again, being that a C-3 classification *Page 797 
would permit the sale of liquor for off-premises consumption.
Arbitrariness and capriciousness by municipal governing bodies cannot be sanctioned under the denomination "fairly debatable." Anything is debatable. Everything is not fairly
debatable. Assuming the posture of this case invokes the "fairly debatable" standard, we find no fairly debatable justification for the denial of Plaintiffs' request to rezone their property from the C-1 to the C-3 classification. Consequently, we hold that the trial court erred in affirming the order of the county commission rejecting the recommendations of the Jefferson County Planning and Zoning Commission.
Accordingly, the judgment is due to be, and it hereby is, reversed, and the cause remanded.
REVERSED AND REMANDED.
SHORES, EMBRY, BEATTY and ADAMS, JJ., concur.
ALMON, J., concurs in the result.
TORBERT, C.J., and MADDOX and FAULKNER, JJ., dissent.
[1] It is essential to a proper analysis of this case to understand that in the immediate area there exist both C-1 and C-3 parcels. In other words, the reclassification from C-1 to C-3 was made on a parcel-by-parcel basis and did not include multiple parcel zones.