THIGPEN, Judge.
This case challenges an approval by the City of Gardendale Planning and Zoning Commission (Commission) regarding Garden Forest Subdivision (Subdivision) which lies within the City of Gardendale (Garden-dale) on the south and east boundaries of the City of Fultondale (Fultondale). The streets providing ingress and egress to the Subdivision traverse through both cities. The streets involved are Honeysuckle Drive, which extends to Fultondale and Gardendale, and Leslie Lane, which lies within the Subdivision.
The plaintiffs own real property located within Gardendale; however, the property of Plaintiff Carroll is located on the west and north sides of Honeysuckle, outside the Subdivision. Honeysuckle was a dead-end road, terminating at Carroll’s property near the east line of the Subdivision.
On June 12, 1986, the Commission approved preliminary plans for the Subdivision conditioned on Subdivision access from Hunters Run Road, until the developers could obtain a 50-foot right-of-way along the southern end of Honeysuckle. Thereafter, final approval provided for a cul-de-sac at the end of Leslie, at or near where it would eventually connect to Honeysuckle. The Subdivision was constructed in conformity with that approved plan. Diagrams of the area to facilitate an understanding of the case follow. Figure 1 reflects the areas as the preliminary plans were approved. Figure 2 reflects the area after the opening of Leslie onto Honeysuckle.
Thereafter, following a public hearing in July 1988, the Commission approved a requested resurvey of Lot 13 in the cul-de-sac of the Subdivision on Leslie, permitting a connection from Leslie to Honeysuckle, and providing a 50-foot right-of-way for that portion of Honeysuckle lying within Gar-dendale. The developers were not successful in acquiring a 50-foot right-of-way through Fultondale as originally provided in the approval of the Subdivision. The alleged needs to open the cul-de-sac were to provide the Subdivision residents with a Gardendale mail code, and to provide better emergency services by Gardendale. The United States Postal Service had refused to grant the Subdivision a Gardendale mail code since its service came by way of Hunters Run which originates in Fultondale. The evidence indicated that if mail was delivered along Honeysuckle, the Subdivision could have a Gardendale mail code, although most of Honeysuckle lies in Ful-tondale.
After approval by the Commission of the resurvey allowing the Leslie cul-de-sac to be opened onto Honeysuckle, the plaintiffs filed a complaint requesting the trial court to enjoin the use of Honeysuckle as a connection to the Subdivision until such time as Honeysuckle complies with subdivision regulations of Gardendale and Fultondale. The complaint further alleged that the *471 elimination of the cul-de-sac was arbitrary and capricious.
On the date of trial, the plaintiffs filed an amended complaint, alleging that in vacating the cul-de-sac, the Commission and Gar-dendale failed to follow the procedure set out in Ala.Code 1975, § 23-4-2, to vacate the cul-de-sac, and that said vacation was not in the public interest because Honeysuckle does not meet subdivision requirements of Jefferson County, Gardendale, or Fultondale. Due to the lateness of the filing of the amendment, the trial court refused to allow the plaintiffs’ amendment and refused to allow the attorneys an opportunity to argue that provision of the law. Nevertheless, the plaintiffs argued that the violation or failure to heed this statute proves that the Commission’s actions were arbitrary and capricious. After receiving the evidence, the court entered its order, finding as follows:
“1. The Plaintiffs are individuals who live on Honeysuckle Drive in Gardendale, Alabama. Honeysuckle Drive may be described as a relatively narrow lane which runs from the heavily traveled Pi-neywood Road to a dead end at the property owned by the Carrolls.
“2. On June 12, 1986, the Gardendale Planning and Zoning Commission (‘Commission’) approved the preliminary plans for the Garden Forest Residential Subdivision (‘Subdivision’). At the time the Commission gave its approval it provided that until the developers could obtain a 50 foot right-of-way along Honeysuckle Drive, the only ingress and egress to the Subdivision would be from Hunters Run.
“3. On September 11, 1986, the developers reported to the Commission that they had been unable to obtain a 50 foot right-of-way along Honeysuckle Drive. The Commission then approved a revised map of the Subdivision which shows Leslie Lane, which would have been the road connecting with Honeysuckle Drive, to be a cul-de-sac instead of a through street.
“4. On April 9, 1987, the Commission again approved an amended map of the Subdivision. The amended map primarily changed the size of certain lots and it shows Leslie Lane as a cul-de-sac.
“5. On July 14, 1988, the Commission once again held a public hearing on the issue of making Leslie Lane a through street by connecting it with Honeysuckle Drive. By connecting Leslie Lane to Honeysuckle Drive, the Subdivision obtained ingress and egress by a shorter, more direct route from the business district of Gardendale (and its police and fire departments) and it allowed the Subdivision to have a Gardendale zip code. The Commission approved a resurvey of Lot 13 of the Subdivision which connected the cul-de-sac at the end of Leslie Lane to Honeysuckle Drive.
“6. The Plaintiffs have all owned their homes on Honeysuckle Drive for a long time. They did not purchase their houses based upon any maps of the Subdivision and have not taken any action or made material changes in reliance upon the Subdivision maps. The residents of the Subdivision favor the extension of Leslie Lane to Honeysuckle Drive and the additional ingress and egress it provides.
“7. Although there are narrow spots along Honeysuckle Drive, fire trucks, police cars and other emergency vehicles can and actually have traveled along Honeysuckle Drive to reach the Subdivision. Being the more direct access to the Subdivision, it is quicker for the emergency vehicles to travel to the Subdivision by using Honeysuckle Drive than it is to go through a portion of Fultondale, Alabama and come into the Subdivision from Hunters Lane.
“8. Because of the location of the city limits of Gardendale and Fultondale, the only direct access to the Subdivision from the rest of Gardendale is along Honeysuckle Drive. To go from Garden-dale to the Subdivision using the Hunters Lane route, a person must go through a portion of Fultondale. Because of this, the U.S. Postal Service changed the Subdivision’s zip code to a Fultondale zip code. This in turn resulted in emergency calls being made to 911 being routed to the Fultondale emergency services in *472 stead of the Gardendale services. Ful-tondale would then transfer the calls to Gardendale which caused additional delays in the response to the emergency situation. After the connection of Leslie Lane to Honeysuckle Drive, the Postal authorities reassigned a Gardendale mail code to the Subdivision, and its emergency calls to 911 now go directly to Garden-dale. One witness testified that while the 911 calls were going to Fultondale it took 15 to 20 minutes for the Gardendale emergency services to respond to his call. More recently he said, after the change back to the Gardendale mail code, the Gardendale emergency services responded ‘right away’ and that they got there ‘quickly.’
“9. The Court notes that part of the Honeysuckle Drive route, in fact part of Honeysuckle Drive itself, is inside the city limits of Fultondale. For whatever reason, this didn’t seem to bother the U.S. Postal Service when it assigned the zip code to the Subdivision whereas the longer route did.
“10. The Commission has taken such action as it could to provide for a sufficient right-of-way for the part of Honeysuckle Drive that is located within the City of Gardendale. The narrow portions of Honeysuckle Drive are on the portion which lies in Fultondale.”
Based upon these findings, the trial court determined that the Commission had the authority to approve a subdivision map allowing Leslie to connect to Honeysuckle; that its actions bore a substantial relationship to the health® safety, and welfare of the community, and that the actions of the Commission were not arbitrary and capricious. Hence, this appeal.
The dispositive issue raised by the appellants concerns whether the decision of the Commission to open the cul-de-sac was arbitrary and capricious, either based upon the substandard nature and condition of Honeysuckle or based on the fact that the Commission was without legal authority to vacate the cul-de-sac in question.
After the original approval of the Subdivision, which provides for a cul-de-sac at the terminus of Leslie, the developers, along with certain residents, petitioned and requested the Commission to approve a resurvey of Lot 13 on Leslie to open the cul-de-sac on Honeysuckle. Following a public hearing, attended by the appellants or their representatives, the Commission approved the resurvey permitting passage from Leslie to Honeysuckle, and provided for a 50-foot right-of-way on that portion of Honeysuckle lying within Gardendale.
While the trial court refused to allow the appellants’ second amended complaint raising the question of whether the Commission had in fact vacated a highway in its opening of the cul-de-sac, nevertheless, the appellants argued that the failure to comply with Ala.Code 1975, §§ 23-4-1, et seq., i.e., requiring the municipal governing body to vacate the cul-de-sac, was arbitrary and capricious. Appellants cite the Gardendale subdivision regulations and McClendon v. Shelby County, 484 So.2d 459 (Ala.Civ.App.1985), to support their proposition that the elimination or opening of a cul-de-sac by the Commission violates Ala.Code 1975, §§ 23-4-1, et seq. Article V, Section 8 of the “Official Subdivision Regulations” of the City of Gardendale, Alabama, 1980, provides that “[n]o street may be vacated unless such action is recommended by the City Planning Commission to the City Council and approved by the City Council.” The appellees assert that opening the cul-de-sac did not constitute a vacation of a street or road, as contemplated in Ala.Code 1975, §§ 23-4-1, et seq. We agree.
Ala.Code 1975, § 23-4-1, addresses the closing of “[sjtreets, alleys and other highways, or portions thereof_” This statute contemplates such closing as a public way, which is not the fact in the instant case. Rather, an additional public way resulted from the approval of the resurvey of Lot 13 by extending Leslie and widening Honeysuckle, in compliance with the regulations of Gardendale. Moreover, this alleged cul-de-sac, while a complete circle, was not surrounded by lots, and is tangent to a right-of-way beyond the subdivision boundary line. Even further, as can be *473 seen from the minutes of the Commission, as well as the testimony at trial, the developers intended at all times to connect Leslie to Honeysuckle, when it could be done, in a safe and reasonable manner. Additionally, the appellants’ property is not within the Subdivision, nor does it touch the property abutting the cul-de-sac. Their right to challenge the opening of the cul-de-sac, therefore, is remote as compared to those who live in the cul-de-sac, or even within the Subdivision, who desire the opening of the cul-de-sac and will benefit directly from its opening.
We note that local governing authorities are presumed to have superior opportunities to know and consider the general welfare of an area. See McClendon, supra; and Episcopal Foundation of Jefferson County v. Williams, 281 Ala. 363, 202 So.2d 726 (1967). The question becomes whether the decision of the Commission to connect Leslie to Honeysuckle was arbitrary and capricious in that it was unrelated to the public health, safety, morals, or general welfare. City of Mobile v. Waldon, 429 So.2d 945 (Ala.1983). The trial court held that the decision was not arbitrary and capricious. This order is favored with a presumption of correctness and is not to be disturbed unless it is plainly or palpably wrong or manifestly unjust. Hall v. Jefferson County, 450 So.2d 792 (Ala.1984). Our standard of review, once a substantial relationship to the promotion of public health, safety, and general welfare has been determined, is whether the Commission’s decision is founded upon “fairly debatable” factual and policy issues. Hall, supra.
There is ample evidence in the record showing that the decision had a substantial and obvious relationship to the health, safety, and general welfare of those persons of Gardendale. We also find that the decision was founded upon “fairly debatable” factual and policy issues.
The testimony of witnesses reflected that connecting Leslie to Honeysuckle would improve emergency services to the residents of the Subdivision and provide them with a Gardendale mail code. Additionally, travel time from Gardendale’s municipal facilities to the Subdivision would be greatly reduced. While Honeysuckle may be less than desirable for ingress and egress to the Subdivision, nevertheless, the testimony of certain witnesses was that traffic along the road was and continues to be classified as “light.” Furthermore, Gardendale has no authority over that portion of Honeysuckle lying in Fultondale, and Fultondale is not a party to this action.
The Commission, after a full and fair public hearing, determined that it was in the best interests of the citizens of Garden-dale, and particularly those of the Subdivision, to allow ingress and egress to the Subdivision from Honeysuckle Drive. Thus, the decision of the Commission to connect Leslie to Honeysuckle was not arbitrary and capricious. The decision of the trial court was not plainly and palpably wrong, and it is due to be, and it is hereby, affirmed.
AFFIRMED.
ROBERTSON, P.J., and RUSSELL, J., concur.
*474 [[Image here]]