PER CURIAM.
Dorothy Kirkland and other residential property owners (“the residents”) on Midfield Drive and on Darrington Road sued the Planning Commission of the City of Montgomery; the City of Montgomery; and The Standard Club, seeking, among other things, a declaration that certain acts of the Commission were unlawful, invalid, and unconstitutional.

Background

The Club sought to develop approximately 14 acres of land, surplus to its golf course, that lies between Midfield Drive and Green-view Drive. The land had to be rezoned from “institutional” to “residential” before development could begin. In September 1989, the Club applied to the Commission to have the land rezoned. That application was denied; however, the Club appealed to the City Council and the Commission’s decision was overruled and the property was rezoned as “residential.”
The Club then applied for final plat approval. That plat provided for a through street from Midfield Drive to Greenview Drive. On April 26, 1990, at a Commission meeting, the residents expressed concerns regarding possible increased traffic that might result from the proposed through street. The chairman of the Commission suggested that the Club consider the idea of a dead-end street with a cul-de-sac, and the Commission voted to delay the request, for further study.
Club representatives met with the residents, and an amended plat was agreed upon as a compromise. On May 18,1990, the Club filed the amended, or alternative, plat with the Commission. The alternative plat eliminated the through street from Midfield Drive and created a cul-de-sac approximately 2,000 feet in length.
At a May 24, 1990, Commission meeting, the original plat and the amended plat, which had both been approved by City engineers *689 and by the Club’s engineer, were presented to the Commission. (Notices of this meeting had been mailed to adjoining property owners on May 14.) The Club representative explained both plats in detail. None of the residents present voiced any objections. In fact, minutes of the meeting reveal the following regarding the amended plat:
“Mr. Joe Mclnnes was present and said he would like to thank each of the members for their patience.... He said he is speaking on behalf of a majority of the Midfield Drive/Darrington Road residents, who would like to support Mr. Kaufman’s presentation. He said they think this is in the best interest of the property, although it is not a real good solution, it is the best that has been proposed. He said on behalf of the majority of the residents, he would like to support this proposal, and ask for the Commission’s approval.”
The amended plat was unanimously approved by the Commission.
The residents sued in the circuit court and, after a hearing, the trial court held, on June 18, 1992, that the actions of the Commission were not unconstitutional, illegal, unlawful, arbitrary, or capricious, and that, if there had been irregularities in the approval, the residents had waived any objections and were estopped from raising objections in the court. The residents appeal.
They claim that: 1) when the plat was approved, four members of the Commission were, as a matter of law, disqualified from serving on the Commission because of the Alabama Ethics Act; 2) the Commission violated its own rules and regulations by exceeding the 600-foot restrictions on dead-end streets; and 3) the Commission violated its rule requiring that a final plat be submitted 20 days before it is to be considered.

Standard of Review

Local government authorities are presumed to have superior opportunities to know the general welfare of an area. McClendon v. Shelby County, 484 So.2d 459 (Ala.Civ.App.1985). The question is, was the Commission’s decision to allow a cul-de-sac rather than a through street arbitrary and capricious as based on factors unrelated to the public health, safety, morals, or general welfare? City of Mobile v. Waldon, 429 So.2d 945 (Ala.1983). The trial court held that the decision was not arbitrary and capricious. This order is favored with a presumption of correctness and is not to be disturbed unless it is plainly or palpably wrong or manifestly unjust. Hall v. Jefferson County, 450 So.2d 792 (Ala.1984). Our standard of review, once a substantial relationship to the promotion of the public health, safety, and general welfare has been determined, is whether the Commission’s decision is founded upon “fairly debatable” factual and policy issues. Id.

Holding

After reviewing the record and considering the oral arguments of counsel, we agree with the trial court’s conclusion that the actions of the Commission were not unconstitutional, illegal, unlawful, arbitrary, or capricious.
1. We first address the residents’ claim that the trial court erred in not finding that the Commission acted arbitrarily and capriciously in approving the plat because the cul-de-sac exceeded the maximum length for such streets. The residents contend that the subdivision regulation adopted by the Commission expressly mandates that cul-de-sac streets not be longer than 600 feet. Here, the alternative plat approved by the Commission created a cul-de-sac street approximately 2,000 feet long. The residents argue that the Commission did not grant a variance, or make any finding to support a variance, from the strict application of the 600-foot rule, and that, therefore, the Commission’s action in approving the alternative plat was null and void.
The original plat met all pertinent regulations and was, therefore, subject to approval. See Frazer v. Tyson, 587 So.2d 330 (Ala.1991). However, because the residents were concerned about possible increased traffic if development were based on the original plat, Club representatives met with the residents and the plat was amended to provide for a cul-de-sac rather than a tie-in street. This variance alleviated the potential problem of increased traffic, and it was approved by the *690 City engineers, the Commission, the Club, and the residents. We note that the Midfield cul-de-sac, as it existed at the time of the hearing, had previously been granted a variance that would allow the street to extend approximately 1,200 feet.
2. We next address the residents’ contention that the Commission failed to comply with § 11(D)(3) of the subdivision regulations, which provides that a plat be submitted to the Commission at least 20 days before the meeting at which the plat is to be considered. It is undisputed that the original plat submitted complied with the 20-day requirement. The alternate plat was submitted on May 18, 1990, only six days before the May 24, 1990, hearing. The residents claim that that plat was submitted in violation of the 20-day rule, and that the Commission, by approving that plat, violated its own regulations, and also violated the requirement of procedural due process.
Herman Calvin Lott, the planning control director and secretary of the Commission at the time of the plat approval, testified that the 20-day rule is a Commission bylaw intended to ensure that internal office procedures can be completed before the matter is submitted to the Commission for public hearing. The Commission asserts, and we agree, that the alternative plat was a compromise to the original plat, and, as such, did not require a separate submission. It has consistently been held that interpretation of a statute by the agency that must operate under and enforce the statute is entitled to favorable consideration by the courts. Sadie v. Tyson, 539 So.2d 1066 (Ala.Civ.App.1988).
3. Next, the residents claim that the Club failed to comply with Montgomery’s City Code provision that requires that a plat be submitted to the Commission seven days before the meeting at which the plat is to be considered. In 1985, the Commission revised that portion of the Code, changing the 7-day requirement to a 20-day requirement.
4. The residents’ next contention attacks the court’s holding on the grounds that at the May 24, 1990, meeting, four members of the Commission were engaged in the real estate or real estate construction business and that they were, therefore, disqualified to serve as members of the Commission by virtue of Ala.Code 1975, § 36-25-9. However, we are not convinced that that was the case.
The residents failed to challenge the qualifications of the Commission members at the hearing, and we find no evidence in the record to indicate that any Commission member was disqualified. The burden is on the residents to show the alleged error on appeal. See Chestnut Hills Civic Ass’n v. Dobbins, 361 So.2d 1043 (Ala.1978).
We note that the members of the Commission unanimously approved the plat in a seven-to-zero vote. Testimony from two Commission members, who the residents say should have been disqualified, reveals that they were involved in building houses as contractors, but were not involved with development. Assuming, arguendo, that the other two members in question were disqualified, the vote would then have been five-to-zero in favor of approving the plat, and their disqualification would have had no effect on the outcome of the hearing.
5. The residents argue that Commission member Tyler Martin should have disqualified herself from voting at the April 26, 1990, and May 24, 1990, meetings. (This member was also attacked in the residents’ previous argument.) They contend that because Martin was a former member of the Club, and because her parents were members at the time she cast her votes, she had a strong personal interest in the outcome of the vote. Because Martin cast a deciding vote at the April 26, 1990, meeting, the residents argue that the subsequent approval of the alternative plat was a nullity.
The Commission bylaws provide:
“A member of the Commission shall disqualify himself from voting on any application or petition to which any of the following conditions apply: (a) the member or spouse of the member holds any pecuniary interest, either agent or owner, in the property in question; (b) the member or spouse of the member is employed, retained, or is acting as agent for any party directly involved in the petition or applica *691 tion, whether or not that party is present; (e) the member or spouse of the member has been employed, retained, or has acted as agent for any party directly involved in the petition or application at any time during the six months preceding the date on which the petition or application is brought before the Commission, whether or not that party is present; or (d) the member or spouse of the member has performed any professional service in connection with the property involved in the application or petition at any time during the six months preceding the date the matter is brought before the Commission.”
Martin was not disqualified under this provision of the bylaws. She testified through affidavit that, at the time of the hearing, she had no pecuniary interest in the property and that her vote was based on the argument heard by the Commission. The residents did not object at the hearing to Martin’s qualifications. We conclude that Martin should not have been disqualified from voting.
6. The residents argue that, because of the late submission of the alternative plat by the Club, and the lack of any notice to the adjoining property owners, they had no reasonable opportunity to ascertain their rights with regard to the alternative plat. Thus, they say, their failure to object cannot be construed as the voluntary and intentional surrender of a known right. We find this argument to be without merit.
The record reflects that on May 22, before the May 24 hearing, a meeting was held with the residents, at which meeting the amended or alternative plat was explained in detail. The residents each testified that they received notice of the hearing. Only one resident testified that he went to the Commission to view the plat. Further testimony revealed that he was unsure whether he viewed the plat before the April hearing or before the May hearing. Not one of the residents could state with certainty that he or she took the time, after receiving notice of the hearing, to go to the Commission to view the plats.
The minutes of the May 24 hearing reveal that both the original plat, which contained a “tie in” at Gunster Road and a “tie in” at Greenview Drive, and the amended plat, which contained the cul-de-sac, were explained in detail by a Club representative. The residents expressed no opposition to the modified plat. In fact, the comments by the residents at the hearing could only be interpreted as unanimous approval of the amended or modified plat.
7. The residents’ last contention is that Joe Mclnnes was not their agent and that there was no evidence of a “meeting of the minds” between them and Mclnnes as to the scope of their relationship. Absent an agency relationship, they argue, the statements made by Mclnnes in support of the Club’s plat cannot be attributed to the other residents so as to bar them from challenging the validity of the Commission’s action in approving the alternative plat. We find this argument also to be meritless.
Testimony revealed that at neighborhood meetings the residents had agreed that Mclnnes would be their spokesperson. Although the residents were present at the hearing before the Commission, they did not voice any objection to Mclnnes’s speech at that hearing, but remained silent while Mclnnes stated that he spoke on behalf of the majority of the residents. After a review of the minutes from the May 24 hearing and the testimony before the trial court, we are convinced that the residents led the Commission and the Club to believe that they approved of, and had no objections to, the amended compromise plat. Had the residents objected to that plat, the Club could have requested that the Commission approve the original plat, which met all regulations.
We hold that the residents are now es-topped from making those objections. We also point out that compromises are favored in the law and that the plat adopted by the Commission was a compromise. We further note, after reviewing the record, that it is apparent that the Club went to great lengths in its proposed development to accommodate the residents. For instance, the Club requested zoning for 100-foot lots, rather than for smaller lots. The Club agreed to have a five-member architectural review committee, with two of the committee members to be *692 residents. The Club also agreed to provide a fence and landscaping, both in excess of any requirements of the Commission.
After considering the evidence and all of the reasonable inferences it would support, we hold that the trial court’s judgment approving the Commission’s action regarding the amended or alternative plat is due to be, and it is hereby, affirmed.
AFFIRMED.
All the Judges concur.